UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ENGINEERS JOINT WELFARE FUND,
*et al.*,

                                        Plaintiffs,

                    -against-                                    5:10-cv-0474 (LEK/ATB)

C. DESTRO DEVELOPMENT CO., INC.,
*et al.*,

                                        Defendants.

_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

On April 22, 2010, Plaintiffs Engineers Joint Welfare Fund ("Welfare Fund"), Engineers

Joint Pension Fund ("Pension Fund"), Engineers Joint Supplemental Unemployment Benefit Fund

("S.U.B. Fund"), Engineers Joint Training Fund ("Training Fund"), Operating Engineers Local 17

Training Fund ("Local 17 Training Fund"), Central Pension Fund of the International Union of

Operating Engineers and Participating Employers ("Central Pension Fund") (together, the "Plans"),

International Union of Operating Engineers, Local Union No. 17 ("Union") (collectively,

"Plaintiffs") commenced this action to recover contributions, interest, liquidated damages, audits

fees, and attorneys' fees and costs under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 *et seq*. and the Labor Management Relations Act of 1947 ("LMRA"),

29 U.S.C. § 185.  Dkt. No. 1 ("Complaint").  On April 30, 2015, Plaintiffs moved for summary

judgment.  Dkt. Nos. 65 ("Motion"); 65-11 ("Memorandum").  Defendants C. Destro Development

Co., Inc. ("Destro Development") and Carmen Destro, Jr. ("Destro") (collectively, "Defendants")

did not oppose the Motion.  For the following reasons, Plaintiffs' Motion is granted in part and

denied in part.

## II.    BACKGROUND

Under Local Rule 7.1(a)(3), "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." L.R. 7.1(a)(3). Therefore, Plaintiffs' Statement of Material Facts is deemed admitted to the extent that it is supported by proper citations to the record. Dkt. No. 65-1 ("Statement of Material Facts"); see also Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

As alleged in the Complaint, the Plans are multi-employer benefit plans within the meaning of §§ 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3), (37). Compl. ¶ 13. From September 1, 2006 through February 23, 2013, Destro Development was party to collective bargaining agreements ("CBAs") with the Union. SMF ¶ 1. The CBAs obligated Destro Development to remit contributions to the Plans for each hour paid to each employee covered by the CBAs and to deduct sums from certain employees' wages and pay those sums to the Union as union dues, voluntary political action fund, political action fund, and defense fund money. Id. ¶¶ 5-6. Destro was the officer and manager of Destro Development and ran the day-to-day operations of the company. Id. ¶ 2. Plaintiffs allege that Defendants are employers within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5). Compl. ¶ 19.

The CBAs bound Destro Development to the terms and conditions of the Plans' Agreements and Declarations of Trust ("Trusts"). SMF ¶ 7. The Trusts provide that unpaid contributions are trust assets. Id. ¶ 8. The Plans adopted a Collections Policy, by which Destro Development is bound. Id. ¶ 10. The Collections Policy obligates Destro Development to submit contributions to the Plans and deductions to the Union no later than the fifteenth day of the month following the

2

month for which the contributions and deductions are due.  Id. ¶ 11.  If Destro Development fails to submits the contributions and deductions by the thirtieth day of the month, its remittances for the month are considered delinquent.  Id. ¶ 12.  Destro Development is liable for delinquent contributions and deductions, plus interest, liquidated damages, and any audit fees and costs and attorneys' fees and costs incurred in collecting such delinquent contributions.  Id. ¶ 13.

From September 1, 2006 through October 2008, Destro Development untimely remitted $96,187.29 in contributions and deductions.  Id. ¶ 18.  Defendants have not paid the interest and liquidated damages due in connection with these untimely contributions and deductions.  Id. ¶ 19. According to audits conducted by Plaintiffs, from September 1, 2006 through December 2012, Destro Development did not remit $249,853.68[1] in contributions and deductions.  Id. ¶ 20.  After crediting $26,821.80 in mistaken payments, Destro Development owes $223,031.88 in contributions and deductions, plus interest and liquidated damages.  Id. ¶¶ 21-22.  Defendants have also not paid Plaintiffs' audits fees or attorneys' fees and costs.  Id. ¶¶ 23-24.

Plaintiffs' Complaint seeks all contributions and deductions determined to be due by audit of Defendants' records, plus applicable interest, liquidated damages, audit fees, and attorneys' fees and costs.  Compl. ¶ 41.  Plaintiffs move for summary judgment against Destro Development in the amount of $762,296.23 and summary judgment against Destro in the amount of $467,447.82.  Mem.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[1] Plaintiffs' SMF contains a clerical error as to the amount of Destro Development's delinquent contributions.  See Dkt. No. 65-9 ("Harrigan Affidavit") ¶¶ 29-30.

law." FED. R. CIV. P. 56. The movant bears the burden of demonstrating the absence of a genuine

issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A court must resolve all

ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v.

Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of

Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998).

Where a motion for summary judgment is unopposed, the court must nonetheless determine

that the movant has meet their burden of showing that there is no genuine issue of material fact.[2]

Vt. Teddy Bear, 373 F.3d at 244. "If the evidence submitted in support of the summary judgment

does not meet the movant' burden of production, then 'summary judgment must be denied *even if*

*no opposing evidentiary matter is presented*.'" Id. (quoting Giannullo v. City of New York, 322

F.3d 139, 141 (2d Cir. 2003)). "An unopposed summary judgment motion may also fail where the

undisputed facts fail to 'show that the moving party is entitled to judgment as a matter of law.'" Id.

(quoting Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996) (per curiam)).

## IV.    DISCUSSION

### A.  Destro Development

#### *1. Unpaid Contributions and Deductions*

Plaintiffs assert violations for unpaid plan contributions under ERISA § 515, which requires

"[e]very employer who is obligated to make contributions to a multiemployer plan under the terms

---

[2] On August 26, 2015, Plaintiffs filed a Letter Motion requesting that the Court deem
Defendants' failure to oppose Plaintiffs' Motion consent to granting that Motion. Dkt. No. 74.
Under Local Rule 7.1(b)(3), the Court may deem a non-moving party's failure to oppose a motion
"consent to the granting or denial of the motion." L.R. 7.1(b)(3). Thus, Defendants' failure to
oppose the Motion is deemed consent to grant it. However, Plaintiffs must still meet their "burden
to demonstrate entitlement to the relief requested." L.R. 7.1(b)(3).

of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Plaintiffs also assert violations of § 301(a) of the LMRA for unpaid union deductions. 29 U.S.C. § 185(a) (authorizing "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce"). The undisputed facts establish that the CBAs required Destro Development to remit contributions and deductions to Plaintiffs for each hour paid to employees who performed operating engineers work. SMF ¶¶ 5-6; Dkt. No. 65-8 ("Noon Affidavit") ¶¶ 18-20; Harrigan Aff. ¶ 18; see also Noon Aff., Ex. A-1 at 23-26, 34-38; Noon Aff., Ex. B-1 at 23-26, 34-38; Noon Aff., Ex. B-2 at 23-26, 34-38.

Plaintiffs' audits demonstrate that Destro Development failed to remit $223,031.88 in contributions and deductions to Plaintiffs for the period from September 1, 2006 through December 2012. Dkt. No. 65-2 ("McCarthy Affidavit") ¶¶ 10-12; McCarthy Aff., Exs. A and B; see also Dkt. No. 65-3 ("DeMacy Affidavit") ¶ 8; DeMacy Aff., Ex. B. Plaintiffs' submissions are sufficient to meet their burden of proving that Destro Development violated § 515 of ERISA and § 301(a) of LMRA and owes Plaintiffs $223,031.88 in delinquent contributions and deductions. See Cement & Concrete Workers Dist. Council Welfare Fund v. Angel Constr. Grp., LLC, No. 08 CV 1672, 2010 WL 3463181, at *4 (E.D.N.Y. June 15, 2010) (finding audit report and spreadsheet listing unreported employee hours sufficient to establish violation of § 515).

In addition to the $223,031.88 in unpaid contributions and deductions, under ERISA § 502(g)(2), Plaintiffs are entitled to

(B)  interest on the unpaid contributions,

5

(C) an amount equal to the greater of –

    (i) interest on the unpaid contributions, or

    (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

29 U.S.C. § 1132(g)(2).

    a. Interest

Plaintiffs are entitled to receive interest on all unpaid contributions. 29 U.S.C. § 1132(g)(2)(B). "[I]nterest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." Id. § 1132(g)(2).

Under the Collections Policy for the Welfare, Pension, S.U.B., and Training Funds, "the employer will be assessed interest on the amount of delinquent contributions at the rate of two percent (2%) month." Harrigan Aff., Ex. F at 3.[3] Plaintiffs' documentation demonstrates that Destro Development owes interest, calculated through June 5, 2015, in the amount of $60,758.11 for unpaid contributions to the Pension Fund, $112,723.42 to the Welfare Fund, $18,132.23 to the S.U.B. Fund, and $68.80 to the Training Fund. DeMacy Aff., Ex. B at 21-24.[4] The Collections Policy for the Central Pension Fund provides that interest is "to be calculated at the rate of 9% simple interest." Dkt. No. 65-6 ("Fanning Affidavit"), Ex. A. at 13. Plaintiffs' documentation demonstrates that Destro Development owes interest, calculated through June 5, 2015, in the amount of $28,446.45 for unpaid contributions to the Central Pension Fund. DeMacy Aff., Ex. B at

---

[3] The Exhibits attached to the Harrigan Affidavit are found at docket numbers 65-9 and 65-10.

[4] The pagination corresponds to the page numbers assigned by ECF.

26. The Local 17 Training Fund does not specify an interest rate and Plaintiffs accordingly claim interest at the rate prescribed by § 502(g)(2), which is currently three percent. DeMacy Aff. ¶ 6; DeMacy Aff., Ex. A. Plaintiffs' documentation demonstrates that Destro Development owes interest, calculated through June 5, 2015, in the amount of $3,463.88 for unpaid contributions to the Local Training 17 Fund. DeMacy Aff., Ex. B at 25.

ERISA § 502(g)(2) directs that in an action to enforce § 515 a court "shall" award interest on unpaid contributions. 29 U.S.C. § 1132(g)(2). Thus, having reviewed Plaintiffs' submissions and found those submissions sufficient to meet Plaintiffs' burden, the Court awards Plaintiffs interest for the unpaid contributions to the Plans in the amounts requested.

Plaintiffs also request interest on the unpaid Union deductions. The award of prejudgment interest on LMRA claims is a matter trusted to the district court's discretion. See Lodges 743 & 746, Int'l Ass'n of Machinists & Aerospace Workers v. United Aircraft Corp., 534 F.2d 422, 446 (2d Cir. 1975); Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 287 (E.D.N.Y. 2010). Prejudgment interest "serves as compensation for the use of money withheld." Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 286 (2d Cir. 1992). Plaintiffs request interest at the state statutory rate in N.Y. C.P.L.R. 5004, which is currently nine percent. Noon Aff. ¶ 25; N.Y. C.P.L.R. 5004. Plaintiffs' documentation demonstrates that Destro Development owes interest, calculated through June 5, 2015, in the amount of $123.65 for unpaid deductions to the C.O.U.C./C.I.R.S.T. fund and $8,924.09 for unpaid deductions to the voluntary political action fund, defense fund, and dues. DeMacy Aff., Ex. B at 27-28. Accordingly, having reviewed Plaintiffs' submissions and found those submissions sufficient to meet Plaintiffs' burden, Plaintiffs are awarded interest on the unpaid Union deductions in the amounts requested.

In total, Plaintiffs are awarded $232,640.63 in interest on Destro Development's unpaid contributions and deductions. Because Plaintiffs only calculated the interest due through June 5, 2015, Plaintiffs are awarded interest through the date of entry of judgment at the rates applicable to each Fund.

### b. Liquidated Damages

Section 502(g)(2) further provides that in an action to enforce § 515 a court "shall" award an amount that is the greater of interest on unpaid contributions or "liquidated damages provided for under the plan in an amount not in excess of 20 percent." 29 U.S.C. § 1132(g)(2). The Pension, Welfare, S.U.B., Training, and Central Pension Funds provide for liquidated damages equal to twenty percent of the delinquent contributions. Harrigan Aff., Ex. F at 3; Fanning Aff., Ex. A at 12-13. Because the interest on unpaid contributions is greater than the liquidated damages under the Plans, Plaintiffs request liquidated damages for each of the Funds as follows: $112,723.42 for unpaid contributions to the Welfare Fund; $59,589.39 for the Pension Fund; $68.80 for the Training Fund; $18,132.23 for the S.U.B. Fund; $3,463.88 for the Local 17 Training Fund; $26,368.63 for the Central Pension Fund. Noon Aff. ¶ 34; DeMacy Aff., Ex. B at 21-26. In total, Plaintiffs claim $220,346.79 in liquidated damages. DeMacy Aff., Ex. B at 20. Having reviewed Plaintiffs' submissions and determined that they are sufficient to meet their burden, the Court awards Plaintiffs liquidated damages in the amount requested. Because Plaintiffs' liquidated damages award is the amount of interest on unpaid contributions, and Plaintiffs only calculated the interest due through June 5, 2015, Plaintiffs are awarded interest through the date of entry of judgment at the rates applicable to each Fund.

### 2. Untimely Contributions and Deductions

Plaintiffs request $2,757.84 in interest and $12,901.44 in liquidated damages for Destro Development's untimely payments totaling $96,187.29 from September 1, 2006 through October 2008. Mem. at 7; Harrigan Aff. ¶¶ 26-27. Section 502(g)(2) only mandates the award of interest and liquidated damages for contributions that are unpaid at the time of suit. Operating Eng'rs Local 139 Health Benefit Fund v. Gustafsion Constr. Corp., 258 F.3d 645, 654 (7th Cir. 2001); Iron Workers Dist. Council & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1508 (2d Cir. 1995); Mich. Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc., 933 F.2d 376, 388 (6th Cir. 1991); Bd. of Trs. of Local 41, Int'l Bhd. of Elec. Workers Health Fund v. Zacher, 771 F. Supp. 1323, 1331-33 (W.D.N.Y. 1991). However, Plaintiffs can claim interest and liquidated damages for Destro Development's untimely payments in violation of the LMRA. See Operating Eng'rs, 258 F.3d at 654 (stating that late payments "violated the terms of the plan, thus entitling the fund to enforce the plan's provisions imposing interest and liquidated damages on delinquent contributions"); Mich. Carpenters Council, 933 F.2d at 390 ("[A] fund has a valid claim for late payment and/or audit damages pursuant to its collective bargaining agreements with defendants."); LaBarbera v. T & M Specialities Ltd., No. CV-065022, 2007 WL 2874819, at *2 (E.D.N.Y. Sept. 27, 2007) ("The CBA and MOAs . . . provide a contractual basis for the assessment of interest, additional damages . . . in the event of untimely contribution payments."); Finkel v. Rico Elec., Inc., No. 07-CV-2145, 2009 WL 3367057, at *3 (E.D.N.Y. Oct. 16, 2009) (same). Prejudgment interest may be awarded on LMRA claims at the court's discretion. Triple A Grp., 708 F. Supp. 2d at 287.

As discussed above, the Collections Policy for the Welfare, Pension, S.U.B., and Training Funds provides that "the Employer will be assessed interest on the amount of delinquent

contributions at the rate of two percent (2%) month." Harrigan Aff., Ex. F at 3. Furthermore, "in

the event the delinquent contributions are paid either prior to commencement of the lawsuit or

proceedings or prior to judgment or other resolution, the Funds are still entitled to collect . . .

interest." Id. at 4. The Central Pension Fund Trust provides that interest will be assessed on

delinquent contributions at the rate of nine percent. Fanning Aff., Ex. A at 12-13. Accordingly,

having reviewed Plaintiffs' submissions and found them sufficient to meet Plaintiffs' burden, the

Court awards Plaintiffs interest as follows: $695.28 on untimely payments to the Pension Fund;

$1,252.23 to the Welfare Fund; $212.55 to the S.U.B. Fund; and $422.23 to the Central Pension

Fund.[5] DeMacy Aff., Ex. B at 21-26. However, the Local 17 Training Fund does not provide for

the award of interest on untimely contributions. See Dkt. No. 65-7 ("Smolinski Affidavit"), Ex. A.

Therefore, Plaintiffs' request for interest on untimely payments to that Fund is denied.

The Collections Policy for the Welfare, Pension, S.U.B., and Training Funds, and the

Central Pension Fund Trust, additionally provide for liquidated damages of twenty percent. Fanning

Aff., Ex. A at 12-13 (providing "as liquidated damages an amount up to twenty (20%) of the amount

found to be delinquent"); Harrigan Aff., Ex. F at 3 (providing "liquidated damages equal to twenty

(20%) of the delinquent fringe benefit contributions"). A district court must "examine whether the

liquidated damages provisions in the operative collective bargaining agreements constitute a penalty

under federal common law." Mich. Carpenters Council, 933 F.2d at 390. The enforceability of a

contractual liquidated damages provision depends on two conditions: (1) "the harm caused by the

breach must be very difficult or impossible to estimate" and (2) "the amount fixed must be a

_____

[5] Plaintiffs have not provided calculations for the interest due on late payments to the
Training Fund. DeMacy Aff., Ex. B at 24.

reasonable forecast of just compensation for the harm caused." <u>LaBarbera</u>, 2008 WL 858985, at *6

(quoting <u>Bricklayers Pension Trust Fund v. Rosati, Inc.</u>, 23 F. App'x. 360, 360 (6th Cir 2001)).

Plaintiffs assert that the costs of collecting late payments are difficult to estimate. Harrigan Aff.

¶ 21. However, Plaintiffs have not established that twenty percent is a reasonable forecast of the

harm. <u>See id.</u> ¶ 22; <u>see also</u> <u>Zacher</u>, 771 F. Supp. at 1334. The Court therefore denies without

prejudice to renew Plaintiffs' request for liquidated damages on account of untimely payments.

Thus, in conclusion, Plaintiffs are awarded $2,582.29 in interest on Destro Development's

untimely payments.

### 3. Attorneys' Fees and Costs

Finally, Plaintiffs request audit fees and attorneys' fees and costs pursuant to ERISA

§ 502(g)(2) and LMRA § 301(a). Mem. at 8. Section 502(g)(2) requires the district court to award

"reasonable attorney's fees and costs of the action." 29 U.S.C. § 1132(g)(2)(D). Additionally, the

Plans' Trusts and Collection Policy provide for the award of all audit fees and attorneys' fees and

costs incurred in seeking recovery of delinquent contributions. Harrigan Aff., Ex. F at 3; Fanning

Aff., Ex. A at 13.

"Attorneys' fees are awarded by determining a presumptively reasonable fee, reached by

multiplying a reasonable hourly rate by the number of reasonably expended hours." <u>Bergerson v.</u>

<u>N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.</u>, 652 F.3d 277, 289 (2d Cir. 2011)

(citing <u>Simmons v. N.Y.C. Transit Auth.</u>, 575 F.3d 170, 174 (2d Cir. 2009)). "The fee applicant

bears the burden of establishing entitlement to an award and documenting the appropriate hours

expended and hourly rates." <u>Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers</u>, 34 F.3d

1148, 1160 (2d Cir. 1994) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983)).

Plaintiffs seek a total of $52,297.32 in attorneys' fees and costs for the period for the period from June 15, 2009 through April 27, 2015. Mem. at 10. In support of their request, Plaintiffs' submit the Affidavit of Jennifer A. Clark ("Clark"), along with billing records. Dkt. No. 65-4 ("Clark Affidavit") ¶¶ 21-26; Id., Ex. H.[6]

Plaintiffs seek fees at the following hourly rates: $247 to $291 for Clark, a partner at Blitman & King LLP ("Blitman & King") with over thirty years of experience on labor and employee benefit law; $282 for Daniel Kornfeld ("Kornfeld"), a partner at Blitman & King with over fifteen years of experience on labor and employee benefit law; $137 to $160 for paralegals and secretaries. Clark Aff. ¶ 23 n.1; Id., Ex. H at 41-42. "Th[e Second] Circuit's 'forum rule' generally requires use of 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" Bergerson, 652 F.3d at 290 (quoting Simmons, 575 F.3d at 174). Recent cases in the Northern District have upheld hourly rates between $250 and $345 for partners, between $165 and $200 for senior associates, and between $80 and $90 for paralegals. Pope v. County of Albany, No. 11-cv-0736, 2015 WL 5510944, at *9 (N.D.N.Y. Sept. 16, 2015) (Kahn, J.) (collecting cases). The rates Plaintiffs seek for Clark and Kornfeld are within the range awarded by courts in the Northern District. Having reviewed the Clark Affidavit, the Court accepts these rates as reasonable. However, the rates Plaintiffs request for their paralegals are higher than the range allowed in the Northern District. Because Plaintiffs have not offered any justification for this higher rate, the Court will apply a rate of $80 to work performed by Plaintiffs' paralegals.

The Court next turns to the reasonableness of the hours billed. "[T]o determine whether time for which reimbursement is sought was reasonably spent, the court must evaluate the tasks and

---

[6] The Exhibits attached to the Clark Affidavit are found at docket numbers 65-4 and 65-5.

the time documented in counsel's contemporaneous time records in light of its general experience and its experience with the case." Liberty Mut. Ins. Co. v. Conmas, Inc., No. 10-CV-717, 2012 WL 913312, at *3 (N.D.N.Y. Mar. 16, 2012) (quoting DLJ Mortg. Capital, Inc. v. Act Lending Corp., No. 07 Civ. 10318, 2008 WL 5517589, at *7 (S.D.N.Y. Dec. 1, 2008)). The party seeking an award of attorneys' fees must support such application with sufficiently detailed records of the nature of the work performed. See Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986).

Plaintiffs' billing records document the hours expended and the nature of the tasks completed for each attorney in sufficient detail. The Court finds the amount of time expended reasonable for pursuing this action. However, Plaintiffs did not submit contemporaneous time records. In the Second Circuit, attorneys seeking an award of fees must submit contemporaneous time records from which the Court can determine whether the hours expended were reasonable. N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983) ("[A]ny attorney . . . who applies for court-ordered compensation in this Circuit for work done after the date of this opinion must document the application with contemporaneous time records. These records should specify, for each attorney, the date, the hours expended, and the nature of the work done."); see also Scott v. City of N.Y., 626 F.3d 130, 133 (2d Cir. 2010) ("Carey establishes a strict rule from which attorneys may deviate only in the rarest of cases."). The Court will accordingly reduce the number of hours for which fees are awarded by 30%. See Monaghan v. SZS 33 Assos., L.P., 154 F.R.D. 78, 84 (S.D.N.Y. 1994) ("[C]ourts in this Circuit intermittently have seen fit to adopt roughly a 30% fee reduction rule for an attorney's failure to keep contemporaneous time records of their services."). The reduction will be deducted proportionally from the number of hours reported for each attorney or paralegal.

Plaintiffs also request $3,260.12 in costs incurred from June 15, 2009 through April 20, 2015. Clark Aff. ¶ 25; Clark Aff., Ex. H at 193-208. "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted). Upon review, the Court finds Plaintiffs' requested costs reasonable.

Accordingly, the Court awards Plaintiffs $32,827.94 in reasonable attorneys' fees and costs.

The Court next considers Plaintiffs' request for $18,320.77 in audit fees. Plaintiffs are entitled to "auditing fees" incurred in collecting delinquent contributions under the Collections Policy. Harrigan Aff., Ex. F at 3. "Requests for audit for audit fees are 'generally determined by utilizing the same standards the court applies in awarding attorneys' fees.'" Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co., 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008) (quoting King v. Unique Rigging Corp., No 01-CV-3797, 2006 WL 3335011, at *5 (E.D.N.Y. Oct. 27, 2006)). Plaintiffs have submitted the invoices of Joseph W. McCarthy & Associates, who performed the audit, indicating the number of hours spent on the audit and the rates charged. McCarthy Aff., Ex. C. However, the invoices do not specify the work performed and therefore offer no basis for the Court to determine whether or not Plaintiffs' request is reasonable. Teamsters Local 814, 545 F. Supp. 2d at 270. Accordingly, Plaintiffs' request for $18,320.77 in audit fees is denied without prejudice.

### 4. Summary

In sum, the Court awards Plaintiffs $711,429.09 against Destro Development.

## B. Destro

Plaintiffs further request judgment against Destro in the amount of $467,447.82, consisting

of $207,221.24 in unpaid contributions, $189,608.49 in prejudgment interest, $52,297.32 in attorneys' fees and costs, and $18,320.77 in audit fees. Mem. at 14.

### 1. Liability

Section 409 of ERISA provides that

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligation, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109. "A fiduciary, under ERISA is 'someone who exercises any discretionary authority or discretionary control respecting management of [an ERISA benefit] plan *or* exercises any authority or control respecting management or disposition of its assets.'" Bricklayers & Allied Craftworkers Local 2, Albany, New York Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 188 (2d Cir. 2015) (alteration in original) (quoting Finkel v. Romanowicz, 577 F.3d 79, 85 (2d Cir. 2009)).

Here, the undisputed facts establish that Destro was the officer and manager of Destro Development, who ran the day-to-day operations of the company, who determined when and how much money would be paid to the Plans, and who chose not to pay the company's obligations to the Plans. SMF ¶ 2. Furthermore, the Agreements and Declarations of Trust for the Welfare, Pension, S.U.B., and Training Funds classify unpaid contributions as trust assets. Harrigan Aff., Ex. A at 42; Id., Ex. B at 76; Id., Ex. C at 106; Id., Ex. D at 146.[7] However, the Agreements and Declarations of

---

[7] Citations to Amendments to the Agreements and Declarations of Trust refer to the pagination assigned by ECF.

Trust for the Local 17 Training Fund and Central Pension Fund do not classify unpaid contributions as trust assets. Fanning Aff., Ex. A; Smolinski Aff., Ex. A. Plaintiffs' submissions are therefore sufficient to establish that Destro was a fiduciary of the Welare, Pension, S.U.B., and Training Funds; they do not establish that Destro was a fiduciary of the Local 17 Training and Central Pension Funds. See Moulton, 779 F.3d at 189 (finding liability under § 409 where complaint alleged defendant exercised control over money due to plaintiff funds, determined which creditors the company would pay, and failed to remit contributions under his control, when the contributions were designated as plan assets); see also In re Halpin, 566 F.3d 286, 290 (2d Cir. 2009) (stating that presumption is that unpaid employer contributions are not plan assets, but that parties can contract around presumption). Accordingly, Destro is liable under § 409 for breach of his fiduciary duties as to the Welfare, Pension, S.U.B., and Training Funds.

## 2. Damages

Having established Destro's liability, Plaintiffs are entitled to "any losses to the plan resulting from such breach." 29 U.S.C. § 1109. Plaintiffs' submissions—discounting for the fact that Destro is not liable for unpaid contributions to the Local 17 Training and Central Pension Funds—establish that Destro owes $149,076.90 in unpaid contributions. Harrigan Aff. ¶ 32; Noon Aff. ¶ 33. Plaintiffs are also entitled to "such other equitable or remedial relief as the court may deem appropriate," 29 U.S.C. § 1109(a), which may include prejudgment interest and attorneys' fees. Moulton, 779 F.3d at 190.

### a. Interest

A district court has "wide discretion" under § 409(a) to award prejudgment interest. Diduck, 974 F.2d at 286. Prejudgment interest is intended to serve "as compensation for the use of money

withheld" and to put "the plan in the position it would have occupied but for the breach." Id. Thus, in order to make the Plans whole, the Court finds it appropriate to award Plaintiffs prejudgment interest against Destro.

As stated in Diduck,

Assessing the appropriate amount of interest requires a comparison of what the plan earned during the time in question and what it would have earned had the money lost due to the breach been available. One must look to the return on investments held by the plan to determine the appropriate interest rate to be applied under § 409. The burden is on defendant to demonstrate the plan would not have placed the money in the most profitable of equally plausible investment alternatives.

Id. Consistent with this statement, Plaintiffs have submitted investment manager reports showing the rates of return on various investments. Harrigan Aff., Ex. I. Plaintiffs claim interest based on the following rates of return earned by their investments during 2009 to 2014:

|  | Highest Rate of Return on Investments 2009 | Highest Rate of Return on Investments 2010 | Highest Rate of Return on Investments 2011 | Highest Rate of Return on Investments 2012 | Highest Rate of Return on Investments 2013 | Highest Rate of Return on Investments 2014 |
| --- | --- | --- | --- | --- | --- | --- |
| Welfare Fund | 9.37% | 10.11% | 7.59% | 7.69% | 5.95% | 4.85% |
| Pension Fund | 28.9% | 10.93% | 5.25% | 9.78% | 10.34% | 6.86% |
| S.U.B. Fund | 8.18% | 7.52% | 4.99% | 4.70% | 1.40% | 3.43% |
| Training Fund | 6.46% | 10.25% | 7.64% | 7.25% | 5.07% | 4.36% |

Harrigan Aff. ¶ 36.

However, based on its review of Plaintiffs' submission, the Court finds that Plaintiffs' documentation for these years appears to be incomplete. Furthermore, Plaintiffs seek interest for the period from 2006 to 2014. See Demacy Aff., Ex. C at 86-93. However, their submission only provides evidence of the rates of return earned during 2009 to 2014. Harrigan Aff., Ex. I. Accordingly, the Court does not find that Plaintiffs have met their burden of establishing that they

17

are entitled to the requested rates.  See Bricklayers & Allied Craftworkers Local 2 v. Moulton

Masonry & Constr., LLC, 113 F. Supp. 3d 601, 607 (N.D.N.Y. 2015).  "The court must . . . explain

and articulate its reasons for any decision regarding prejudgment interest."  Henry v. Champlain

Enters., Inc., 445 F.3d 610, 623 (2d Cir. 2006).  Because the Court cannot determine based on the

record whether Plaintiffs' requested rates are appropriate and Plaintiffs do not suggest an alternative

rate, Plaintiffs' request for prejudgment interest is denied without prejudice to renew.

### b.  Attorneys' Fees and Costs

Under § 1131(g)(1) of ERISA, "[i]n any action under this subchapter . . .  the court in its

discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C.

§ 1131(g)(1).  A court may only award attorneys' fees to a plaintiff who has achieved "some degree

of success on the merits."  Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 254 (2010); see

also Donachie v. Liberty Life Assurance Co. of Boston, 745 F.3d 41 (2d Cir. 2014) ("After Hardt,

whether a plaintiff has obtained some degree of success on the merits is the sole factor that a court

*must* consider in exercising its discretion.").  Under Hardt, courts retain discretion to consider the

five Chambless factors in deciding whether to award fees.  Hardt, 560 U.S. at 255 n.8; see also

Toussaint v. JJ Weiser, Inc., 648 F.3d 108, 110 (2d Cir. 2011).  The Chambless factors are:

> (1) the degree of opposing parties' culpability or bad faith; (2) ability of opposing
> parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees
> against the opposing parties would deter other persons acting under similar
> circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all
> participants and beneficiaries of an ERISA plan or to resolve a significant legal question
> regarding ERISA itself; and (5) the relative merits of the parties' positions.

Donachie, 745 F.3d at 46 (quoting Hardt, 560 U.S. at 249 n.1).  "[N]o one Chambless factor is

dispositive."  Pierorazio v. Thalle Constr. Co., Inc., No. 13 CV 4500, 2014 WL 3887185, at *3

18

(S.D.N.Y. June 26, 2014). Furthermore, "granting a prevailing plaintiff's request for fees is appropriate absent 'some particular justification for not doing so.'" Donachie, 745 F.3d at 47 (quoting Birmingham v. SoGen–Swiss Int'l Corp. Ret. Plan, 718 F.2d 515, 523 (2d Cir. 1983)).

The Court finds that an award of fees is appropriate in this case. Plaintiffs are the prevailing party, having established Destro's liability under § 409. With respect to the first Chambless factor, the Court finds the Destro was culpable. "[A] defendant is 'culpable' under Chambless where it 'violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate.'" Locher v. Unum Life Ins. Co. of Am., 389 F.3d 288, 299 (2d Cir. 2004). Here, Destro did not remit Defendants' obligations to Plaintiffs for a period extending from 2006 to 2014. Harrigan Aff. ¶¶ 36-37; Noon Aff. ¶¶ 37-38. Destro used trust assets to pay for other obligations, including sports tickets, health insurance, life insurance, investments, car payments, personal and corporate travel, and premiums on a snowmobile. Clark Aff. ¶ 9(5)(a). Furthermore, Defendants did not accurately report the number of hours paid to their employees and misrepresented the work performed by certain employees, causing Plaintiffs to incur audit and attorneys' fees pursuing Defendants' delinquency. Noon Aff. ¶¶ 45-46; Harrigan Aff. ¶¶ 11-12. Other Chambless factors weigh in favor of awarding Plaintiffs fees: an award of fees would deter other parties from similar conduct; Plaintiffs' position was clearly of merit, because Plaintiffs' audits demonstrate that Defendants failed to remit fees for a period from 2006 to 2014; the action confers a common benefit on the beneficiaries of the Plans by making the Funds whole. See Bricklayers, 113 F. Supp. 3d at 609. The Court is unable to determine Destro's ability to satisfy an award of attorneys' fees.

Accordingly, consistent with the Court's analysis above regarding the reasonableness of

Plaintiffs' fee request, Plaintiffs are awarded $32,827.94 in attorneys' fees against Destro.  To the

extent, Plaintiffs request audit fees, that request is denied without prejudice to renew because

Plaintiffs have not shown they are entitled to audit fees under § 1131(g)(1).  Furthermore, the Court

found above that Plaintiffs failed to meet their burden of showing that they were entitled to the

requested audit fees.

<u>c.</u> Summary

The Court therefore awards Plaintiffs $181,904.84 against Destro.

**C. Defendants' Answer**

In their Answer, Defendants state that Plaintiffs failed to properly credit certain payments.

Dkt. No. 12 ("Answer").  To the extent Defendants seek to state a claim under ERISA, Defendants

lack standing.  Under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), a civil action may be brought by

"the Secretary [of Labor], or by a participant, beneficiary or fiduciary."  Neither Destro

Development nor Destro are participants, beneficiaries, or fiduciaries of the Plans.  29 U.S.C.

§ 1002(7), (8), (21).  Accordingly, Defendants lack standing to assert a claim under ERISA and

Plaintiffs' Motion is granted as to Defendants' defense.

**V.      CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' Motion (Dkt. No. 65) for summary judgment is **GRANTED in

part and DENIED in part** consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that Plaintiffs are awarded $711,429.09 plus post-judgment interest at the rate

pursuant to 28 U.S.C. § 1961 against Defendant C. Destro Development Corporation, Inc.,

consisting of: (1) $223,031.88 in unpaid contributions and deductions; (2) $232,640.63 in interest

and (3) $220,346.35 in liquidated damages on unpaid contributions and deductions, plus interest

from June 5, 2015 through the date of judgment at the rates provided for by 29 U.S.C. § 1132(g)(2)

and the Trusts and Collections Policy;[8] (4) $2,582.29 in interest on untimely contributions, and (5)

$32,827.94 in attorneys' fees and costs; and it is further

    **ORDERED**, that Plaintiffs are awarded $181,904.84 plus post-judgment interest at the rate

pursuant to 28 U.S.C. § 1961 against Defendant Carmen Destro, Jr., consisting of: (1) $149,076.90

in unpaid contributions and (2) $32,827.94 in attorneys' fees and costs; and it is further

    **ORDERED**, that Plaintiffs may renew their Motion for summary judgment within **thirty**

**(30) days** of the date of this Memorandum-Decision and Order; and it is further

    **ORDERED**, that if Plaintiffs do not renew their Motion for summary judgment within

**thirty (30) days** of the date of this Memorandum-Decision and Order, then the Clerk of Court shall

enter judgment in the above amounts in favor of Plaintiffs and close this action; and it is further

    **ORDERED**, that Plaintiffs' Letter Motion (Dkt. No. 74) is **GRANTED**; and it is further

    **ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules.

    **IT IS SO ORDERED.**

---

[8] The applicable rates of interest are: 2% per month for the Pension, Welfare, S.U.B., and Training Funds; 9% simple interest for the Central Pension Fund; the rate prescribed by ERISA § 502(g)(2) for the Local 17 Training Fund; and the rate prescribed by N.Y. C.P.L.R. 5004 for unpaid Union deductions.

DATED:      March 31, 2016
            Albany, NY

                                          _____
                                          Lawrence E. Kahn
                                          U.S. District Judge