UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ENGINEERS JOINT WELFARE FUND,
*et al.*,

                              Plaintiffs,

      -against-                                  5:10-CV-0474 (LEK/ATB)

C. DESTRO DEVELOPMENT CO., INC.,
*et al.*,

                              Defendants.

## DECISION AND ORDER

**I.    INTRODUCTION**

       This action returns to the Court on Plaintiffs Engineers Joint Welfare Fund, Engineers Joint Pension Fund, Engineers Joint Supplemental Unemployment Benefit Fund, Engineers Joint Training Fund, Operating Engineers Local 17 Training Fund, Central Pension Fund of the International Union of Operating Engineers and Participating Employers, and International Union of Operating Engineers, Local Union No. 17's motion for reconsideration of the Court's March 31, 2016 Memorandum-Decision and Order. Dkt. Nos. 75 ("March Order"), 76 ("Motion"), 76-1 ("Memorandum"). Defendants C. Destro Development Co., Inc. ("Destro Development") and Carmen Destro Jr. ("Destro") do not oppose the Motion. For the following reasons, Plaintiffs' Motion is granted in part and denied in part.

**II.    BACKGROUND**

       The Court assumes the parties' familiarity with the facts and history of this case and recites only those facts necessary to the resolution of the pending Motion. Plaintiffs commenced this action on April 22, 2010, to recover contributions, interest, liquidated damages, audit fees,

and attorneys' fees and costs under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. Dkt. No. 1 ("Complaint"). On April 30, 2015, Plaintiffs filed a motion for summary judgment, which Defendants did not oppose. Dkt. No. 65 ("Summary Judgment Motion"). The Court granted the Summary Judgment Motion in part and denied it in part, Mar.Order at 20–21, and Plaintiffs timely filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), Mot.[1]

## III. LEGAL STANDARD

A motion for reconsideration may be granted where there is "an intervening change of controlling law, [newly available] evidence, or the need to correct a clear error or prevent a manifest injustice." Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). "The standard for granting a motion for reconsideration 'is strict and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" Advanced Fiber Techs. Tr. v. J&L Fiber Servs., Inc., 751 F. Supp. 2d 348, 382–83 (N.D.N.Y. 2010) (Kahn, J.) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). "[R]econsideration

---

[1] Plaintiffs move for reconsideration without specifying the federal rule under which they seek relief. Mem. A motion seeking reconsideration of a judgment will automatically be considered a motion to alter or amend under Rule 59(e) if it is filed within twenty-eight days. Anderson v. Holy See, 934 F. Supp. 2d 954, 957 (N.D. Ill. 2013); Piper v. U.S. Dep't of Justice, 312 F. Supp. 2d 17, 20 (D.D.C. 2004).

'should not be granted where the moving party seeks solely to relitigate an issue already decided.'" Id. at 383 (quoting Shrader, 70 F.3d at 257).

**IV. DISCUSSION**

Plaintiffs move for reconsideration on three grounds: (1) Plaintiffs should be awarded the full amount of attorneys' fees and costs requested in the Summary Judgment Motion, (2) the Court should have granted Plaintiffs' request for paralegals' fees at the rate of $134 to $160 per hour, and (3) the Court should award prejudgment interest against Destro. Mem. 2, 5, 7.

**A. Attorneys' Fees**

Plaintiffs' Summary Judgment Motion requested attorneys' fees in the amount of $49,037.20. Dkt. No. 65-5 ("First Clark Affidavit") at 193.[2] In the March Order, the Court found that Plaintiffs were entitled to attorneys' fees, but that Plaintiffs had failed to submit contemporaneous time records as required in this circuit. Mar.Order at 13; see also N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983) ("[A]ny attorney . . . who applies for court-ordered compensation in this Circuit for work done after the date of this opinion must document the application with contemporaneous time records."). Therefore, the Court reduced the number of hours for which attorneys' fees were awarded by thirty percent. Mar.Order at 13; see also Monaghan v. SZS 33 Assocs., L.P., 154 F.R.D. 78, 84 (S.D.N.Y. 1994) ("[C]ourts in this Circuit intermittently have seen fit to adopt roughly a 30% fee reduction rule for an attorney's failure to keep contemporaneous time records of their services.").

---

[2] The First Clark Affidavit includes an affidavit and five exhibits. The cited page numbers for the First Clark Affidavit refer to those generated by the Court's electronic filing system ("ECF"). Citations to specific paragraph numbers refer to the affidavit itself.

In the Second Circuit, parties may be awarded attorneys' fees only where they submit contemporaneous time records, which "should specify, for each attorney, the date, the hours expended, and the nature of the work done." Carey, 711 F.2d at 1148. Such records may be presented in the form of computer-generated printouts, but those printouts "must be accompanied by affidavits or other evidentiary material showing that the printouts are based upon or derived from *contemporaneous* records which are accurately reflected in the printouts or summaries." Handschu v. Police Dept. of N.Y.C., 679 F. Supp. 2d, 488, 505 n.10 (S.D.N.Y. 2010). Plaintiffs' Summary Judgment Motion included a narrative of legal services specifying the date, attorney or paralegal, amount of time expended, and the nature of the work that was completed. First Clark Aff. at 152–93. There was not, however, any indication that the records were created contemporaneously. Plaintiffs provided an affidavit from Jennifer A. Clark, a partner at Blitman & King LLP, who asserted that the narrative of legal services was accurate, but she provided no information as to how and when it was created. First Clark Aff. ¶¶ 21–24. Therefore, reconsideration of the Court's prior decision on attorneys' fees is not warranted based on the need to correct clear error or prevent manifest injustice.

Plaintiffs' motion for reconsideration of attorneys' fees also includes the submission of new evidence. In particular, Plaintiffs provide an additional affidavit from Clark, which describes the manner in which the records were created. Dkt. No. 76-1 ("Second Clark Affidavit") ¶¶ 3–4. Clark states that the narrative of legal services represents a contemporaneous record and that each entry was made into a computer program as the work was completed. Id. ¶ 4. But this new evidence may not be considered by the Court in deciding the present Motion. Although courts may consider newly available evidence on reconsideration, there is no indication that the

4

information contained in the Second Clark Affidavit is newly available. Indeed, Clark is simply providing information about Blitman & King LLP's record-keeping practices that was surely known to Clark at the time of her first affidavit.

In order for evidence to be considered newly available, it must be "evidence that was 'truly newly discovered or could not have been found by due diligence.'" Space Hunters, Inc. v. United States, 500 F. App'x 76, 81 (2d Cir. 2012) (quoting United States v. Potamkin Cadillac Corp., 697 F.2d 491, 493 (2d Cir. 1983)). "A motion to reconsider is not petitioner's opportunity to put forward evidence that he could have, but failed, to provide the Court when the Court initially considered the motion." NEM Re Receivables, LLC v. Fortress Re, Inc., 187 F. Supp. 3d 390, 396 (S.D.N.Y. 2016) (quoting Muyet v. United States, No. 03-CV-4247, 2009 WL 2568430, at *3 (S.D.N.Y. Aug. 19, 2009)). Because Plaintiffs' evidence is not "newly available," Plaintiffs' motion to reconsider the Court's decision on attorneys' fees is denied.

**B. Paralegals' Fees**

In the March Order, the Court granted attorneys' fees to Plaintiffs but found that Plaintiffs' requested hourly rate of $134–$160 for paralegals was too high. Mar.Order at 12. Plaintiffs now move for reconsideration of that portion of the March Order, arguing that the $134–$160 rates are necessary in order to "[e]nsure[] that the trustees recoup the actual costs incurred in collecting delinquencies." Mem. at 5.

Courts typically calculate attorneys' fees by multiplying a reasonable hourly rate by the number of hours reasonably expended. Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr., 652 F.3d 277, 289 (2d Cir. 2011). In order to determine a reasonable hourly rate, courts must consider what a reasonable client would be willing to pay. Arbor Hill

Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 184 (2d Cir. 2007). In the Second Circuit, district courts apply the "forum rule," which generally requires the use of "the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." Bergerson, 652 F.3d at 290 (quoting Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009)).

Here, the Court arrived at an hourly rate of $80 by considering attorneys' fees awards granted in other cases in the Northern District. Mar.Order at 12; see also Pope v. County of Albany, No. 11-CV-736, 2015 WL 5510944, at *11 (N.D.N.Y. Sept. 16, 2015) (Kahn, J.) (awarding fees of $90 per hour for work performed by paralegals); Jimco Enters., Inc v. Lehigh Gas Corp., No. 07-CV-578, 2014 WL 1239030, at *6 (N.D.N.Y. March 25, 2014) ($80). While other courts in this district have found that higher hourly rates for paralegals can be reasonable, e.g., Bricklayers and Allied Craftworkers Local 2 v. Moulton Masonry & Const., LLC, 113 F. Supp. 3d 601, 609 (N.D.N.Y. 2015) (awarding $155 per hour), awarding attorneys' fees based on an hourly rate of $80 for paralegals does not constitute the type of legal error or manifest injustice that would be required in order to grant reconsideration. Plaintiffs' motion for reconsideration of the Court's decision on paralegal fees is denied.

**C. Interest Against Destro**

In the March Order, the Court found it "appropriate to award Plaintiffs prejudgment interest against Destro." Mar.Order at 17. The Court also found, however, that Plaintiffs had not provided sufficient information as to the appropriate interest rate, and the Court denied Plaintiffs' request for prejudgment interest without prejudice to renew. Id. at 18. Instead of bringing a renewed motion for prejudgment interest, Plaintiffs seek prejudgment interest through the present

6

Motion. Mem. at 7. While a motion for reconsideration is not the appropriate vehicle for Plaintiffs to seek the relief requested, the Court will, in the interest of judicial economy, treat this portion of the Plaintiffs' motion for reconsideration as a renewed motion for prejudgment interest.

"The issue of 'whether or not to award prejudgment interest [in ERISA cases] is ordinarily left to the discretion of the district court.'" Henry v. Champlain Enters., Inc., 445 F.3d 610, 622 (2d Cir. 2006) (alteration in original) (quoting Jones v. UNUM Life Ins. Co. of Am., 223 F.3d 130, 139 (2d Cir. 2000)). Prejudgment interest is intended to serve "as compensation for the use of money withheld" and to put "the plan in the position it would have occupied but for the breach." Diduck v. Kaszyski & Sons Contractors, Inc., 974 F2d 270, 286 (2d Cir. 1992), abrogated on other grounds by Gerosa v. Savasta & Co., Inc., 329 F.3d 317 (2d Cir. 2003). Therefore, prejudgment interest is calculated by comparing "what the plan earned during the time in question and what it would have earned had the money lost due to the breach been available." Id. In calculating lost investment income, the burden is on the defendant to show that the plan would not have placed the money in its most profitable plausible investment. Id.

      *1. Upstate Funds*

The Court denied Plaintiffs' prior motion for prejudgment interest against Destro because Plaintiffs failed to provide the information required to calculate prejudgment interest. Mar.Order at 17. In particular, Plaintiffs did not provide the highest annual rate of return on investments during the years 2006–2008 for the Upstate New York Engineers Health Fund, Upstate New York Engineers Pension Fund, Upstate New York Engineers S.U.B. Fund, and Upstate New York Engineers Training Fund (collectively, the "Upstate Funds"). Id. In the present Motion,

Plaintiffs have once again failed to provide the highest rate of return on investments for the Upstate Funds for the years 2006–2008. Mem. at 9. Instead, Plaintiffs seek $112,000.14 in prejudgment interest based on the highest annual rate of return on investments during the years 2009–2014, and Plaintiffs decline to seek prejudgment interest for the years 2006–2008.[3] Id.

Plaintiffs do not explain why they are not seeking prejudgment interest for 2006–2008, and the Court assumes it is because at least some of the Upstate Funds had negative rates of return during those years. The question then is whether a plaintiff may simply choose not to seek prejudgment interest for years in which their investments lost money. On the one hand, the purpose of prejudgment interest is compensatory, not punitive; it is meant to put a party in the position it would have been in but for the withholding. See Diduck, 974 F.2d at 286 ("[P]rejudgment interest is not intended to penalize the trustee but serves as compensation for the use of money withheld.") Therefore, where prejudgment interest is assessed based on a plan's investment income, it would make sense to award interest based on the plan's actual returns, even if those returns are negative. On the other hand, allowing fiduciaries to reduce their liability because of a plan's negative return in a given year would frustrate a separate purpose of prejudgment interest: preventing unjust enrichment. Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 946 (8th Cir. 1999). A fiduciary should not be allowed to enrich himself by investing and

---

[3] Plaintiffs also claim that they did not seek prejudgment interest for the Upstate Funds during the years 2006–2008 in the Summary Judgment Motion. Mem. at 9. But the Summary Judgment Motion itself was not so clear. The affidavit of Daniel P. Harrigan, the administrator of the Upstate Funds, claimed that Destro owed Plaintiffs prejudgment interest based on lost investment income "for each year during the period September 2006 through to date." Dkt. No. 65-9 ¶ 38. The memorandum of law, however, asserted that Destro owed "interest through June 5, 2015 based upon the Funds' highest rate of return on investments during each of the years 2009 to date." Dkt. No. 65-11 at 14.

8

earning profit on withheld benefits, and it may be too much to assume that a withholding fiduciary did not make money in a given year just because the plan had a negative return on its investments.

In LaScala v. Scrufari, No. 93-CV-982, 2011 WL 5864200, at *6 (W.D.N.Y. Nov. 22, 2011), the Western District of New York addressed this very question. In that case, the plaintiff funds had negative returns of 9.8–11.8% during at least one of the years for which prejudgment interest was calculated. Id. at *6. Rather than reducing the breaching fiduciary's liability based on the plaintiff funds' negative returns, the court allowed the plaintiffs to simply waive their claim to prejudgment interest for the period in question. Id. The court did, however, leave open the possibility of offsetting a fiduciary's liability based on a plaintiff fund's negative returns if the fiduciary made a showing that "the use of fund assets was 'fair and reasonable under all of the circumstances.'" Id. (quoting Chao v. Merino, 452 F.3d. 174, 184 (2d Cir. 2006)). But the court in LaScala found that the fiduciary had a "longstanding history of self-dealing" and could not make such a showing. Id.

The Court finds this reasoning persuasive and adopts the approach outlined in LaScala. The Court allows Plaintiffs to waive the Upstate Funds' claim to prejudgment interest for the years 2006–2008 because Destro has failed to show that his use of funds was "fair and reasonable under all of the circumstances." Indeed, Destro used trust assets to pay for unrelated personal expenses, including sports tickets, health insurance, life insurance, investments, car payments, personal travel, and premiums on a snowmobile. First Clark Aff. ¶ 9(5)(a). Therefore, the Court awards prejudgment interest of $112,000.14 against Destro based on the Upstate Funds' highest annual rate of return on investments during the years 2009–2014.

### 2. *Central Pension Fund*

Plaintiffs also seek $73,814.26 in prejudgment interest on unpaid contributions to the Central Pension Fund of the International Union of Operating Engineers and Participating Employers ("Central Pension Fund"). Mem. at 8. Destro is not, however, liable for prejudgment interest as to unpaid contributions to the Central Pension Fund. In the March Order, the Court found that Plaintiffs failed to establish that Destro was a fiduciary of the Central Pension Fund, and that Destro was thus not liable for unpaid contributions to the Central Pension Fund. Mar.Order at 16. Therefore, Destro is similarly not liable for prejudgment interest on those unpaid contributions.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' Motion for Reconsideration (Dkt. No. 76) is **DENIED in part** as to the reconsideration of attorneys' fees and the hourly rate for paralegals, and **GRANTED in part** as to prejudgment interest against Carmen Destro, Jr.; and it is further

**ORDERED**, that Plaintiffs are awarded $112,000.14 in prejudgment interest against Destro; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: January 30, 2017
Albany, New York

Lawrence E. Kahn
U.S. District Judge